**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DIWANN MATHIS,

Plaintiff,

v. Case No. 8:25-cv-2949-KKM-NHA

ALAIN LOPEZ and JOHN DOE,

Defendants.

---

**ORDER**

DiWann Mathis sues Alain Lopez and John Doe, an unidentified employee of Lopez's, alleging violations of the Fair Housing Act's (FHA) prohibitions on discrimination based on familial status and violations of Florida law. *See* 4th Am Compl. (Doc. 25). Lopez moves to dismiss the fourth amended complaint for failure to state a claim. MTD (Doc. 32). Mathis responds in opposition. Resp. (Doc. 44). For the reasons below, I grant the motion as to the FHA claims against Lopez, dismiss the FHA claim against Doe for lack of subject matter jurisdiction, and decline to exercise supplemental jurisdiction over the remaining state claim.

## I. BACKGROUND

Lopez owns non-party AML Services Corporation and the home that Mathis once leased from AML. *See* 4th Am. Compl. ¶¶ 1–2. On May 1, 2025, Mathis and his wife, Marketa Mathis, executed a lease agreement with AML

for the property. *Id.* ¶ 9. Their two children also resided in the home. *See id.* ¶ 11.

"On September 1, 2025, Defendant John Doe, a maintenance worker employed by or contracted through non-party AML . . . and acting under Defendant Lopez's direction and control, arrived at the [home] to perform septic tank maintenance." *Id.* ¶ 13. "Instead of properly removing sewage through appropriate sanitation channels, Defendant John Doe pumped raw sewage directly onto the [home's] grass and yard area—an area used by Plaintiff's minor children—creating an immediate public health hazard." *Id.* ¶ 14. Mathis "observed and recorded this illegal sewage dumping." *Id.* ¶ 15. "John Doe saw that he was being recorded and attempted to conceal his face." *Id.*

After this incident, Mathis "submitted written requests" to AML for "necessary repairs, including remediation of the sewage contamination, rainwater intrusion, and insect infestation caused by gaps beneath doors." *Id.* ¶ 16. "All repair requests were denied without inspection or explanation." *Id.* ¶ 17. After Mathis recorded the "sewage dumping" and submitted repair requests, "Lopez, through AML, ceased responding to work orders for the [home] entirely." *Id.* Allegedly these denials "signaled the beginning of a retaliatory posture" in response to Mathis's "exercise of his rights to oppose

unlawful housing practices and to maintain safe and sanitary housing for his family." *Id.* ¶ 18.

Mathis owed $1,875 in monthly rent on the home, "due on the first of each month, with a grace period of three to five days." *See id.* ¶ 10. Mathis paid, or attempted to pay, the September rent in two separate payments, both of which were late according to the alleged due date. *See id.* ¶¶ 19–21. On September 9, 2025, he "deposited $1,200.00 in cash" into AML's bank account as a partial payment. *Id.* ¶ 19. On September 16, 2025, Lopez initiated an eviction action against Mathis in Hillsborough County Court for non-payment of rent for September. *Id.* ¶ 24. On September 19, 2025, Mathis "deposited the remaining $675.00 in cash into AML's" bank account. *Id.* ¶ 21.

Lopez obtained a default final judgment for possession against Mathis on October 18, 2025. *Id.* ¶ 40. Mathis appealed to the Second District Court of Appeal, which automatically stayed enforcement for a time. *See id.* ¶ 41. On March 6, 2026, the Hillsborough County Sheriff executed a writ of possession, evicting Mathis and his family. *See* Notice (Doc. 33) ¶ 8.

On October 30, 2025, Mathis and Marketa Mathis initiated this action. *See* Compl. (Doc. 1). Multiple dismissals for shotgun pleading followed. *See* (Docs. 5, 11, 16). On February 2, 2026, Marketa Mathis dropped out of the action, seemingly to allow her to personally serve the defendants. *See* 2d Am. Compl. (Doc. 12); (Docs. 20, 21, 28, 29). On February 18, 2026, Mathis moved

for leave to amend his complaint for the fourth time. (Doc. 22). I granted the motion and cautioned Mathis that he would not receive further leave to amend "absent extraordinary circumstances." (Doc. 24). On March 2, 2026, apparently dissatisfied and wishing to amend again, Mathis initiated a new, virtually identical action and immediately moved to consolidate it with this action. *See Mathis v. AML Servs. Corp.*, No. 8:26-cv-557-KKM-TGW (M.D. Fla. Mar. 2, 2026) (Docs. 1, 3). I denied the motion and closed that case. *See id.* at (Doc. 9).

On May 19, 2025, Mathis moved to add Marketa Mathis back to the action as a plaintiff, which now-dismissed defendant Christopher Fiori opposed. *See* (Docs. 59, 63). I denied this motion because Mathis failed to establish that "justice so require[d]" amendment at that stage and as an attempt to subvert Federal Rule of Civil Procedure 4's service requirements. *See* (Doc. 66); FED. R. CIV. P. 15(a)(2); FED. R. CIV. P. 4(c)(2).

On June 18, 2026, Mathis dismissed Fiori under Rule 41(a)(1)(A)(i). *See* (Doc. 91). Thus, the fourth amended complaint asserts three remaining claims: violation of 42 U.S.C. § 3617 by Lopez and Doe (Count I); violation of 42 U.S.C. § 3604(b) by Lopez (Count II); and violation of Florida Statute § 83.64 by Lopez (Count III).

Over the course of this litigation, Mathis has filed a multitude of other motions—two of which bear mentioning. First, on June 22, 2026, he filed a motion to strike Lopez's motion to dismiss based on a hyper-technical reading

of boilerplate language in the motion and purported admissions from Lopez, who proceeds pro se, in June 2026 that the March 2026 motion was drafted by someone else and that Lopez had arranged for counsel should there be *further* proceedings in the action. *See* Mot. to Strike (Doc. 98) at 1–2. Mathis asks that I strike Lopez's motion to dismiss and either require Lopez to answer the complaint or allow Mathis to move for default. *Id.* at 7–8. Mathis does not identify any legal authority that would allow for such relief or any grounds that would justify doing so. Mathis's motion to strike is denied.

Second, Mathis moves for leave to file a supplemental complaint under Rule 15(d) so that he might add a new state claim. *See* Mot. to File Supplemental Compl. (Doc. 101). As explained below, I decline to exercise jurisdiction over the remaining state claim and close the case, so I deny his motion for leave to add another state claim as moot.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will

not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" under Rule 12(b)(6), a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint's factual allegations are accepted "as true" and construed "in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Consideration is limited "to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. at 544.

## III. ANALYSIS

Lopez moves to dismiss Counts I and II because Mathis fails to adequately plead facts that, taken as true, would establish the elements of the claims. *See* MTD at 2. Lopez argues that Mathis fails to allege "interference with FHA-protected rights" or that Lopez acted in response to "FHA-protected activity/status." *See id.* Lopez avers that Count III is insufficiently pleaded

because Florida law requires Mathis to plead it against AML as the "contracting party." *See id.*

Mathis fails to meaningfully respond to Lopez's admittedly brief arguments regarding Counts I and II. *See* Resp. at 1–9. Instead, Mathis accuses Lopez of relying on Fiori, who was still active in the case at the time, to draft the motion, *see id.* at 2–3, and responds to Lopez's arguments regarding Count III, *see id.* at 4–8, before faulting Lopez's motion for failing to "deny any factual allegation in the Complaint," *see id.* at 8, and generally averring that the claims are adequately pleaded, *see id.* at 9.

**A. Count I – Section 3617**

The FHA's anti-retaliation provision makes it unlawful for anyone to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [42 U.S.C. §§ 3603, 3604, 3605, or 3606]." 42 U.S.C. § 3617. Although the Eleventh Circuit "ha[s] not articulated the elements of a *prima facie* FHA-retaliation case in published caselaw," its unpublished cases extract from Title VII precedent that a plaintiff "must demonstrate that (1) he engaged in protected conduct, (2) he suffered an adverse action, and (3) there is a causal link between the adverse action and the protected conduct." *Philippeaux v. Miami Apartments Invs., LLC*, No. 24-

11468, 2025 WL 275402, at *6 (11th Cir. Jan. 23, 2025) (per curiam) (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)). In short, a plaintiff asserting a Section 3617 claim must "plausibly allege an underlying violation of one of [Sections 3603, 3604, 3605, or 3606]." *Watts v. Joggers Run Prop. Owners Ass'n, Inc.*, 133 F.4th 1032, 1044 (11th Cir. 2025).

Mathis bases his Section 3617 claim on Lopez's purported retaliatory eviction after Mathis "exercised rights protected by 42 U.S.C. §§ 3604(a) and 3604(b)." 4th Am. Compl. ¶ 55. But Mathis does not allege the exercise of any rights under either provision. Section 3604(a) makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." Section 3604(b) prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."

Mathis unreasonably reads these provisions to create a general right to "habitable housing" or to housing free from any conditions that might make "housing unsafe for his family." *See* 4th Am. Compl. ¶ 56. Thus, Mathis appears to contend that he has exercised rights under the FHA by complaining to his landlord about conditions in and around the home that would, by virtue

of his children living in the home, expose children to unsanitary conditions. *See id.* ¶¶ 55–56. Therefore, according to Mathis, Lopez evicted Mathis's family in retaliation for exercising rights under the FHA. *See id.* ¶ 57.

Mathis specifically contends that he exercised FHA rights by documenting the "sewage dumping;" "[s]ubmitt[ing] written requests for remediation of sewage contamination, rainwater intrusion, and insect infestation;" "[o]ppos[ing] unlawful housing practice by reporting unsanitary and unsafe housing conditions affecting his family;" and "[a]ssert[ing] his rights relating to the availability, habitability and enjoyment of housing for his family unit." *Id.* ¶ 55.

But the FHA does not create a right to a habitable home or to housing free from conditions that are unsanitary or unsafe for a family. *See, e.g.*, *Northern v. Pedcor Mgmt. Corp.*, No. 2:22-CV-120-PPS/JPK, 2022 WL 1449610, at *2 (N.D. Ind. May 9, 2022) ("The Fair Housing Act is a discrimination law; it does not generally establish a right to a 'habitable home.' " (citation omitted)); *Tunstill v. Oneil*, No. 1:23-CV-01541-JMS-TAB, 2023 WL 6623025, at *4 (S.D. Ind. Oct. 11, 2023) (concluding that a complaint over exposure to raw sewage in the home was a dispute with the landlord over the maintenance of the home, not a federal claim of any sort, including under the FHA); *Ross v. Midland Mgmt. Co.*, No. 02 C 8190, 2003 WL 21801023, at *4 (N.D. Ill. Aug. 1, 2003) ("The FHA also does not create a private right of

action to ensure habitability."). Indeed, nothing in the text of the provisions that Mathis identifies provides such a right. *See* 42 U.S.C. § 3604(a)–(b). The fact that Mathis's children also endured the conditions that Mathis reported to Lopez does not cause the complaint to state a claim under Section 3617 because the complaints invoked only general habitability issues, which do not involve the exercise of a right under the FHA or constitute protected activity. *See, e.g.*, *Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs*, 47 F.3d 1068, 1069, 1074 (11th Cir. 1995) (per curiam) (holding that a Mexican-American woman's complaint about treatment in the workplace did not constitute protected activity because she did not allege discrimination based on a protected ground); *Birdyshaw v. Dillard's Inc.*, 308 F. App'x 431, 436–37 (11th Cir. 2009) (per curiam) (similar)[1]; *Jones v. Pontiac Hous. Comm'n*, No. 2:25-CV-10681, 2025 WL 4720311, at *5 (E.D. Mich. Nov. 6, 2025) (dismissing FHA retaliation claims ultimately based on general complaints about housing conditions). To be clear, Mathis does not allege, for example, that he complained that Lopez forced Mathis's family to endure unsanitary conditions while providing adequate maintenance services to tenants who did not have familial status or that Lopez evicted only families

[1] Although *Coutu* and *Birdyshaw* are Title VII cases, the Eleventh Circuit "look[s] to cases interpreting Title VII" "[w]hen interpreting the FHA." *Fox v. Gaines*, 4 F.4th 1293, 1296 (11th Cir. 2021).

who complained about their housing conditions while individuals could complain without fear of retaliation. *See* 4th Am. Compl. ¶¶ 16, 55.

In the light of the above, Mathis fails to state a claim for retaliation under Section 3617 and I dismiss Count I as to Lopez with prejudice.

Mathis asserts Count I against "All Defendants" but, beyond wholesale incorporation of the background factual allegations, fails to allege any conduct by John Doe related to his retaliation claim. *See id.* ¶¶ 52–64. If a plaintiff's "factual or legal support for" a federal claim "lacks plausible foundation" it renders "the claim wholly insubstantial and frivolous." *Resnick v. KrunchCash, LLC*, 34 F.4th 1028, 1035 (11th Cir. 2022) (citation modified). Such is the case for Count I against the unidentified and unserved John Doe. To begin, the claim is fatally flawed because it is premised on a right to habitable housing that the Fair Housing Act does not create. Next, the incorporated factual allegations merely allege that Doe illegally dumped sewage into Mathis's yard. *See* 4th Am. Compl. ¶¶ 4, 13. There are no allegations that Doe played any role in evicting Mathis or that he acted (or failed to act) because of Mathis's familial status. Lastly, Mathis's claim hinges on the allegation that the eviction was in retaliation for Mathis's complaints *following* the sewage incident. That theory fails, as explained above, but even if it did not, it would not apply to Doe, whose alleged actions precede Mathis's complaints.

In the light of the above deficiencies, I sua sponte dismiss the claim against Doe without prejudice because it is "wholly insubstantial and frivolous," and I lack subject matter jurisdiction over it. *Resnick*, 34 F.4th at 1034 (quoting *Blue Cross & Blue Shield of Ala. v. Sanders*, 138 F.3d 1347, 1352 (11th Cir. 1998)); *see also Guthrie v. U.S. Gov't*, 618 F. App'x 612, 617 (11th Cir. 2015) (per curiam) ("[A] district court has the inherent power to dismiss an action that is 'so patently lacking in merit as to be frivolous.' " (quoting *Jefferson Fourteenth Assocs. v. Wometco de Puerto Rico, Inc.*, 695 F.2d 524, 526 & n.3 (11th Cir. 1983))); *Vega v. Kahle*, No. 23-12065, 2025 WL 3540349, at *3 n.2 (11th Cir. Dec. 10, 2025) (per curiam) ("[W]e conclude that district courts have the inherent authority to *sua sponte* dismiss without prejudice patently frivolous suits even where the plaintiff has paid the filing fee.").

**B. Count II – Section 3604(b)**

Section 3604(b) "operates to prohibit landlords from refusing to rent to (or from evicting) a person because that person has children living with them." *Woodard v. Fanboy, L.L.C.*, 298 F.3d 1261, 1265 (11th Cir. 2002). In other words, this provision of "the FHA protects a tenant or prospective homebuyer from receiving differential or less favorable treatment in housing terms, conditions, or privileges if the but-for cause of that treatment is [the plaintiff's relevant protected status]." *Fox v. Gaines*, 4 F.4th 1293, 1296 (11th Cir. 2021).

Like his retaliation claim, Mathis's claim for familial status discrimination under Section 3604(b) is premised on his unreasonable interpretation of the FHA. Mathis reads Section 3604(b) to provide a "right to occupy housing free from conditions that ma[k]e the dwelling unsafe for children." 4th Am. Compl. ¶ 69. Thus, he contends that Lopez violated Section 3604(b) by "subjecting [Mathis] to retaliatory eviction proceedings for complaining about conditions that endangered his minor children," which Mathis interprets as "discriminating against [Mathis] based on conduct directly related to his familial status and his family's exercise of familial-status-related housing rights." *Id.* ¶ 71.

This theory fails to state a claim for the same reasons the retaliation claim fails. The right that Mathis reads into the FHA does not exist. Even setting aside that, under the timeline that Mathis alleges, he was evicted for failing to pay his rent on time, *see id.* ¶ 10, 19, 24, and taking as true Mathis's allegation that Lopez evicted him in retaliation for his complaints, *see id.* ¶ 71, Mathis does not allege that Lopez evicted him *because of* Mathis's family status. As with the retaliation claim, an eviction in retaliation for general complaints about the habitability of the home, even if children also suffer the poor conditions, does not equate to an eviction because of familial status. Mathis fails to state a claim for discrimination under Section 3604(b) and I dismiss Count II with prejudice.

I decline Mathis's request, buried at the end of his response, *see* Resp. at 9, to allow him to amend yet again to address any deficiency. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1222 (11th Cir. 1999) (per curiam) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."). To allow him to amend to address the deficiencies in Counts I and II would be futile because both are premised on non-existent FHA rights. Further, Mathis has been on notice that he relied on a right that does not exist in Sections 3603–3606 of the Fair Housing Act since the order dismissing his second amended complaint as a shotgun pleading. *See* Order (Doc. 16) at 2–3 (noting that his then-single FHA claim for retaliation "does not sufficiently allege the exercise by the plaintiff of a right contained in Sections 3603–3606 of the Fair Housing Act").

Because Counts I and II constituted the only federal claims, I decline to exercise supplemental jurisdiction over the state law claim in Count III. "In the ordinary course, where the federal claims have been dismissed and the case is before a federal district court solely through supplemental jurisdiction, a court should decline supplemental jurisdiction." *Stalley v. Cumbie*, 586 F. Supp. 3d 1211, 1249 (M.D. Fla. 2022) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)), *aff'd*, 124 F.4th 1273 (11th Cir. 2024). Before doing so, "courts engage in a two-step process: first, the district court must

confirm that it has discretion to decline under § 1367(c); and second, it must consider whether prudential factors counsel against dismissal." *Id.*

Because I dismissed Mathis's federal claims, I have discretion to decline supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006) ("Any one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims.").

Next, I must consider whether "judicial economy, convenience, fairness, and comity" counsel against dismissing the remaining state counterclaims. *Ameritox, Ltd. v. Millennium Lab'ys, Inc.*, 803 F.3d 518, 537 (11th Cir. 2015) (citation modified); *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). In general, the Eleventh Circuit "encourage[s] district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (per curiam). That is "particularly the case where . . . the dismissal occurs without any analysis of the merits of the state claims." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018). The general rule remains true even if "the Court has overseen pretrial litigation and extensive discovery." *Stalley*, 586 F. Supp. 3d at 1249.

As in the usual case, judicial economy, convenience, fairness, and comity support declining the exercise of supplemental jurisdiction. I have not analyzed

the remaining state claim. Further, Mathis is a Florida citizen, and he can just as conveniently seek relief in his home state's courts as he can in this Court. Indeed, he has already engaged in related litigation in Florida courts.

## IV. CONCLUSION

Mathis fails to state a claim in Counts I and II against Lopez. Mathis's claim against John Doe is wholly insubstantial and frivolous. I decline to exercise supplemental jurisdiction and dismiss the remaining count without prejudice so that Mathis may file it in Florida state court, should he choose. Accordingly, the following is **ORDERED**:

1. Lopez's Motion to Dismiss (Doc. 32) is **GRANTED in part.**
2. Counts I and II of the Fourth Amended Complaint (Doc. 25) as to Lopez are **DISMISSED with prejudice**.
3. Count I as to John Doe is **DISMISSED without prejudice**.
4. Count III is **DISMISSED without prejudice**.
5. Mathis's Motion to Strike (Doc. 98) is **DENIED**.
6. Mathis's Motion for Leave to File a Supplemental Complaint (Doc. 101) is **DENIED as moot**.
7. The Clerk is directed to **ENTER JUDGMENT**, which shall read: "Counts I and II, as to Defendant Lopez, are dismissed with prejudice. Count I, as to Defendant Doe, is dismissed without prejudice. Count III is dismissed without prejudice." The Clerk is

further directed to **TERMINATE** any pending motions, hearings, or deadlines and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on August 24, 2026.

Kathryn Kimball Mizelle
United States District Judge